**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**RICHARD ALAN DAVIS**
**ADC #89568**                                                                                                   **PLAINTIFF**

V.                           NO. 5:12CV00371-BSM-BD

**RAY HOBBS, Director,**
**Arkansas Department of Correction,** *et al.*                                    **DEFENDANTS**

**RECOMMENDED DISPOSITION**

**I.      Procedures for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to United States District Chief Judge Brian S. Miller.  Any party may file written objections to this Recommendation.

Objections must be specific and must include the factual or legal basis for the objection.  An objection to a factual finding must identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation.  A copy will be furnished to the opposing party.

If no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing all of the evidence in the record.  By not objecting, you may also waive any right to appeal questions of fact.

    Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

**II.**    **Discussion:**

Plaintiff Richard Alan Davis, an inmate at the Arkansas Department of Correction ("ADC"), Varner Unit, filed a pro se complaint (docket entry #2) under 42 U.S.C. § 1983, alleging that: (1) Defendants Banks, Washington, and the Classification Committee assigned him to segregation for more than a year without a warden's review, in violation his due process rights; (2) Defendants Meinzer, Culclager, and Stephens denied him 48-hours of relief from isolation after thirty continuous days in segregation, in violation of his due process rights; (3) Defendant Hazel Robinson's use of abusive language violated his Eighth Amendment right to be free of cruel and unusual punishment; and (4) Defendants Magness, Hobbs, Banks, Meinzer, Page, Culclager, and Stephens inadequately staffed the Varner Unit, in violation of his Eighth Amendment rights. (#2) The Court has already dismissed Mr. Davis's claims against Hazel Robinson and Larry May. (#8)

Mr. Davis has moved for partial summary judgment on the due process claims in this lawsuit. (#20) Defendants have moved for summary judgment on all of Mr. Davis's remaining claims. (#53) Defendants argue that Mr. Davis's constitutional claims fail as a matter of law; he failed to exhaust his administrative remedies with regard to his Eighth

Amendment claim against Defendants Magness, Hobbs, Banks, Meinzer, Page, Culclager, and Stephens; and his claims for money damages against the Defendants in their official capacities are barred by sovereign immunity.  Mr. Davis has responded to the Defendants' motion.  (#59, #60, #61, #62)

Based on the evidence presented, the Defendants' motion (#53) should be GRANTED, and Mr. Davis's motion for partial summary judgment (#20) should be DENIED as moot.

**III.   Discussion:**

   A.   Standard

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246, 106 S.Ct. 2505 (1986).  Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party must go beyond the pleading and, by deposition, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial."  FED.R.CIV.P. 56(e); *Mosley v. City of Northwoods*, 415 F.3d 908, 910-11 (8th Cir. 2005)(internal citation omitted) ("The nonmoving party may not rest on mere allegation or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for

trial.")  If the opposing party fails to show that there are specific, important facts in dispute, summary judgment should be granted.  See *Celotex*, 477 U.S. at 322.

      B.      Due Process Claims

      1.      Warden Review

On August 31, 2011, Mr. Davis was placed in administrative segregation on "punitive status" at the ADC's Varner Unit.  It is undisputed that while Mr. Davis was housed in administrative segregation, he was provided with periodic 60-day reviews.  It is also undisputed that on September 21, 2012, Defendant Warden James Banks conducted a "warden's review" and determined that Mr. Davis should remain in administrative segregation.  Mr. Davis claims that because his review with Warden Banks was conducted after he had been housed in administrative segregation for more than one year, his due process rights were violated.

In analyzing this claim, the Court must first determine whether Mr. Davis had a protected liberty interest triggering the protection afforded by the due process clause of the United States Constitution.  Obviously, the liberty interests of those in prison are significantly curtailed.  A prisoner's liberty interests are limited to freedom from restraint that "imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or to actions which "inevitably affect the duration of [a prisoner's] sentence."  *Sandin v. Conner*, 515 U.S. 472, 487 (1995).  While placement in punitive isolation or administrative segregation for relatively short periods does not give

rise to a liberty interest, an inmate's prolonged assignment to administrative segregation, at some point at least, does trigger his due process rights.

Here, for purposes of this motion, the Court will assume that Mr. Davis's assignment to administrative segregation for over a year implicates the due process clause. See *Iqbal v. Hasty*, 490 F.3d 143, 161 (2d Cir. 2007) (segregation for longer than 305 days in standard "special housing unit" conditions, as a matter of law, was sufficiently atypical to require procedural due process protection under *Sandin*).

The next question, then, is what process was Mr. Davis due? Periodic, meaningful reviews are constitutionally required for an inmate housed in administrative segregation for a prolonged period. See *Williams v. Norris*, 277 Fed. Appx. 647, 649 (8th Cir. 2008); *Rahman X v. Morgan*, 300 F.3d 970, 973–74 (8th Cir. 2002) (discussing sufficiency of process for ADC inmate in segregation cell); *Jones v. Mabry*, 723 F.2d 590, 594 (8th Cir. 1983) (due process requires procedure for periodic review of "ad seg" status); *Kelly v. Brewer*, 525 F.2d 394, 400 (8th Cir. 1975) (where inmate is held in ad seg for prolonged or indefinite period, due process requires that his situation be reviewed periodically in a meaningful way).

Here, Mr. Davis does not contend that he was not provided periodic reviews; nor does he claim that his review with the warden was not "meaningful." He claims instead that the failure to provide him this review in exactly one year, as required by ADC policy,

resulted in a due process violation.  The Constitution, however, is not so cut-and-dried as the ADC policy.

While ADC policy 11-42 provides that "[n]o inmate shall remain in a segregation classification for more than one year unless he has been personally interviewed by the Warden at the end of one year and such action is approved by him" (#53-2 at p.4), this does not necessarily mean that Mr. Davis's constitutional rights were violated.  The law is well-settled that the failure to follow ADC policy or procedure, standing alone, is not enough to establish a constitutional violation.  *McClinton v. Arkansas Dep't of Corr.*, 166 Fed. Appx. 260 (8th Cir. 2006) (citing *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996)).

Here, it is undisputed that Warden Banks reviewed Mr. Davis's continued placement in administrative segregation on September 21, 2012.  Thus, even though Mr. Davis's review occured one year and twenty-one days after he was assigned to administrative segregation, this fact alone does not state a federal claim for relief.

In *Jones v. Walker*, 2007 WL 1582835 (E.D. Ark. May 15, 2007), the Court reached a similar conclusion.[1]  In *Jones*, an inmate plaintiff argued that his due process rights were violated when he was not provided an interview with the warden until after he had spent nearly fifteen months in administrative segregation.  The Court concluded that

---

[1] The Recommended Disposition issued by United States Magistrate Judge H. David Young was adopted by United States District Judge Billy Roy Wilson on May 30, 2007.  *Jones v. Walker*, 2007 WL 1576015.

Mr. Jones's claims failed for three reasons.  First, Mr. Jones failed to establish a protected liberty interest; second, the Defendants' failure to follow ADC policy failed to state a constitutional claim; and third, because Mr. Jones was not released from administrative segregation following his review with the warden, there was no indication that he would have been released from administrative segregation had his status been reviewed three months earlier.   Likewise, in this case, Mr. Davis's claim also fails.

Because Mr. Davis was afforded a meaningful "annual review" by Defendant Warden Banks, albeit 21 days past the one-year mark, his claim fails as a matter of law.

2.	48-Hour Relief

Mr. Davis also claims that the Defendants' failure to provide him 48-hour relief from administrative segregation in April 2012 violated his due process rights.  He claims that his 48-hour relief was "miscalculated" and that he was only afforded 47-hour relief. This claim also fails.

ADC policy provides that "[i]nmates serving consecutive punitive isolation sentences will received 48-hour relief at the end of each 30-day sentence."  As with the annual-review claim, however, the Defendants' failure to follow ADC policy does not rise to a constitutional level.   (#53-7 at p.3)  As a matter of law, miscalculating the 48-hour relief period by one hour does not state a constituional claim, even if a relief period were constitutionally required.  In any event, Mr. Davis has not established that he has

any liberty interest in the "48-hour relief." Without an underlying liberty interest, Mr. Davis's due process claim would fail.[2]

C. Exhaustion

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners exhaust all "available" remedies before filing suit under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 738, 121 S.Ct. 1819 (2001) (holding that available remedies "must be exhausted before a complaint under § 1983 may be entertained"). For purposes of § 1983, an "available remedy" is one that is "capable of use for the accomplishment of a purpose; immediately utilizable [and] accessible." *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001). If exhaustion is not complete by the time a lawsuit is filed, the Court must dismiss all unexhausted claims. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003).

---

[2] The Court notes that as of April 2012, Mr. Davis had been housed in administrative segregation for approximately eight months. During that time, he was provided relief from administrative segregation. Thus, the Court cannot conclude that in April 2012, Mr. Davis's liberty interests were at issue. See *Scott v. Coleman*, 2012 WL 5233519 (8th Cir. Oct. 23, 2012) (unpublished decision) (upholding district court's finding that plaintiff inmate failed to state a due process claim after assigned to punitive isolation for 158 days without a hearing); *Driscoll v. Youngman*, Case No. 95–4037, 1997 WL 581072 (8th Cir. Sept. 22, 1997) (unpublished decision) (finding that 135 days in disciplinary and administrative segregation without "meaningful exercise, natural light or adequate time in the library" did not satisfy the *Sandin* standard); and *Furlough v. Brandon*, 2009 WL 4898418 (E.D.Ark. Dec. 15, 2009) (inmate plaintiff failed to state a due process claim after being assigned to administrative segregation for nearly nine months).

Whether a claim has been properly exhausted turns on the specifics of the prison's policy. *Jones v. Bock*, 549 U.S. 199, 923 (2007). Although a prisoner can be excused from exhausting administrative remedies, this exception applies only when correction officials have prevented the prisoner from using grievance procedures or when officials themselves have not complied with the administrative procedures. *Miller v. Norris*, *supra* at 740; *Foulk v. Charrier*, 262 F.3d 687, 697–98 (8th Cir. 2001).

Here, Defendants argue that Mr. Davis failed to exhaust his administrative remedies with regard to his claim that Defendants Magness, Hobbs, Meinzer, Culclager, Page, and Stephens failed to provide adequate security at the Varner Unit of the ADC. Defendants present the affidavit of Barbara Williams, ADC Grievance Supervisor, in support of their motion. (#53-4) Ms. Williams testified that Mr. Davis filed only one grievance in which he complained about the inadequate staffing and security at the Varner Unit. (#53-4 at pp.2-3) The only Defendant named in that grievance was Defendant Banks. (#53-4 at p.3)

In his one fully exhausted grievance, Mr. Davis claims that Warden "James Banks and members of the Arkansas Department Board of Correction have[,] with deliberate indifference[,] exposed Davis to unconstitutional conditions of confinement in not providing enough correctional officers for the [Varner] unit." (#53-5 at p.1)

Mr. Davis previously identified Defendant Magness as Chairman of the Board of Correction. (#2 at p.3) As such, it appears that Mr. Davis identified Mr. Magness by title

9

in his fully exhausted grievance, and he did fully exhaust this claim against Defendant Magness. However, Mr. Davis has failed to come forward with any proof to rebut the evidence showing that he did not fully exhaust this claim against Defendants Hobbs, Meinzer, Culclager, Page, and Stephens. He also has failed to allege or present any evidence that he was prevented from fully exhausting his administrative remedies.

Because the undisputed evidence shows that Mr. Davis did not fully exhaust his administrative remedies with regard to his claims against Defendants Hobbs, Meinzer, Culclager, Page, and Stephens, his claims against them should be dismissed, without prejudice.

D. Inadequate Security at the Varner Unit

Mr. Davis complains that the Defendants acted with deliberate indifference to his safety by providing inadequate security at the Varner Unit. Mr. Davis presents multiple affidavits in support of this claim in which he explains how officers on specific dates either failed to patrol or properly inspect the barracks at the Varner Unit. Mr. Davis, however, fails to explain or provide any evidence to show that he was injured as a result of this alleged conduct. Further, he fails to provide any proof showing that Defendants Magness and Banks were responsible for any alleged constitutional violation.

In a § 1983 action, a supervisor cannot be held vicariously liable for the constitutional violations of a subordinate based solely on the supervisory relationship. *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 1948 (2009); *Parrish v. Ball*, 594

F.3d 993, 1001 (8th Cir. 2010); and *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (holding that the "general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support [§ 1983] liability"). Therefore, a prisoner "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676, 129 S.Ct. at 1948. Here, Mr. Davis has not offered any proof that either Defendant Magness or Banks was responsible for the constitutional violations that Mr. Davis alleges. He has not come forward with any evidence that Defendant Magness or Banks was aware that prison officials failed to properly patrol or inspect the barracks at the Varner Unit. As a result, this claim also fails.

    E.    Sovereign Immunity

Mr. Davis's claims for money damages from the Defendants in their official capacities are barred by sovereign immunity. A civil litigant cannot recover money damages from state actors sued in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989). For that reason, Mr. Davis's official-capacity claims seeking money damages must be dismissed.

**IV.    Conclusion:**

The Court recommends that the Defendants' motion for summary judgment (#53) be GRANTED. Mr. Davis's due process claims should be DISMISSED, with prejudice. His claims against Defendants Hobbs, Meinzer, Culclager, Page, and Stephens alleging

failure to properly staff the Varner Unit of the ADC should be DISMISSED, without prejudice, based on Mr. Davis's failure to exhaust his administrative remedies. Mr. Davis's claim that Defendants Magness and Banks violated his constitutional rights by failing to properly staff the Varner Unit of the ADC should also be DISMISSED, without prejudice. In addition, Mr. Davis's claims against the Defendants in their official capacities for money damages should be DISMISSED, with prejudice. Finally, Mr. Davis's motion for partial summary judgment (#20) should be DENIED, as moot.

DATED this 15th day of May, 2013.

_____
UNITED STATES MAGISTRATE JUDGE